# EXHIBIT A

## IN ARBITRATION PROCEEDINGS BEFORE
## FINRA DISPUTE RESOLUTION, INC.

---

IN THE MATTER OF THE ARBITRATION
BETWEEN:

MICHAEL ALLEN JACOBS in his individual capacity, and as Trustee of the MICHAEL ALLEN JACOBS TRUST dtd 6/7/2022, and as Trustee of the MICHAEL ALLEN JACOBS LIVING TRUST dtd 12/06/2016, and as Grantor and Beneficiary of the MICHAEL JACOBS CHARITABLE REMAINDER TRUST dtd 12/06/16,

FINRA Case. No.

Claimant,

v.

EDWARD JONES (CRD # 250), EQUITABLE ADVISORS, LLC (CRD # 6627), VANGUARD MARKETING CORPORATION (CRD # 7452), and EJIRO ODE OKUMA (CRD # 5774832)

Respondents.

---

## STATEMENT OF CLAIM

Claimant Michael Allen Jacobs in his individual capacity, and as Trustee of the Michael Allen Jacobs Trust dtd 6/7/2022, and as Trustee of the Michael Allen Jacobs Living Trust dtd 12/06/2016, and as Grantor and Beneficiary of the Michael Jacobs Charitable Remainder Trust dtd 12/06/16 ("Claimant" or "Mr. Jacobs") by and through his attorneys, Epperson & Greenidge, PA, as and for his Statement of Claim, hereby submits the following claims against EDWARD JONES (CRD # 250) ("Edward Jones"), EQUITABLE ADVISORS, LLC (CRD # 6627) ("Equitable Advisors"), VANGUARD MARKETING CORPORATION (CRD # 7452) ("Vanguard"), and EJIRO ODE OKUMA (CRD # 5774832) ("Mr. Okuma") (collectively "Respondents") and alleges the following:

## JURISDICTIONAL ALLEGATION

The jurisdiction of this Tribunal is invoked under the Federal Arbitration Act and pursuant to the arbitration clause contained in (a) the licensing agreement that Respondents have with the Financial Industry Regulatory Authority ("FINRA"), by which the firms individually and collectively agreed to submit all disputes and/or complaints (i) with customers and/or (ii) arising out of or in connection with its business and/or (iii) arising out of the employment or termination of employment of its associated persons to arbitration, (b) the FINRA Code of Arbitration Procedure, and (c) the Form U-4 for Ejiro Ode Okuma ("Mr. Okuma").  See, e.g. Spear, Leeds & Kellogg v. Central Life Assur. Co., 85 F.3d 21 (2d Cir. 1996); Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352 (2d Cir. 1995); John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 59 (2d Cir. 2001); Vestax Sec. Corp. v. McWood, 280 F.3d 1078, 1080 (6th Cir. 2002).

## PARTIES

### Claimant

At all times material to this claim, Mr. Jacobs is and was a resident of Carrollton, Georgia. Mr. Jacobs is also (1) the Trustee of the Michael Allen Jacobs Trust dtd 6/7/2022, (2) the Trustee of the Michael Allen Jacobs Living Trust dtd 12/06/2016, and (3) the Grantor and Beneficiary of the Michael Jacobs Charitable Remainder Trust dtd 12/06/16.

### Respondents

At all times relevant hereto, EDWARD JONES (CRD # 250), is and was a registered broker-dealer and a FINRA member firm.  Edward Jones was the broker-dealer for the Claimant in relation to the unlawful conduct described herein. Therefore, Edward Jones is required to arbitrate this dispute with the Claimant under the FINRA Code.

At all times relevant hereto, EQUITABLE ADVISORS, LLC (CRD # 6627) is and was a registered broker-dealer and a FINRA member firm.  Equitable Advisors supervised Mr. Okuma (its registered representative and associated person) from May 5, 2023 through the present when Mr. Okuma committed many of the unlawful investment-related acts against the Claimant as pleaded *infra*. Therefore, Equitable Advisors is required to arbitrate this dispute with the Claimant under the FINRA Code.

At all times relevant hereto, VANGUARD MARKETING CORPORATION (CRD # 7452) is and was a registered broker-dealer and a FINRA member firm.  Vanguard was the broker-dealer for the Claimant in relation to the unlawful conduct described herein.  Therefore, Vanguard is required to arbitrate this dispute with the Claimant under the FINRA Code.

At all times relevant hereto, EJIRO ODE OKUMA (CRD # 5774832) was Claimant's registered representative and fiduciary, and effectuated the unlawful conduct described herein while employed by Respondents Edward Jones and Equitable Advisors.

## FACTUAL BACKGROUND

Mr. Jacobs is an 81-year-old gentleman who has lived most of his life in Carrollton in western Georgia.  His wife of 26-years (Rita) passed away more than a decade ago after a battle with cancer.  After her death, Mr. Jacobs lived alone for many years and recently his health has declined significantly.  Mr. Jacobs was also a wealthy man, until very recently.  Mr. Jacobs had amassed a fortune of approximately $10 million in investable assets as recently as the summer of 2023. He accumulated this fortune through a combination of inheritance, savings from his work in the insurance industry, real estate investing and market growth of his investments.

Beginning in approximately October of 2016, Mr. Okuma became Mr. Jacobs's financial advisor while a registered representative at Edward Jones.  Almost immediately Mr. Okuma

convinced Mr. Jacobs that he should transfer his entire personal fortune into trusts that Mr. Okuma would help create for him. Relying on Mr. Okuma's advice, and with his assistance, on December 6, 2016 Mr. Jacobs created the 'Michael Allen Jacobs Living Trust dtd 12/06/2016' (hereafter referred to as the '2016 Living Trust') and the 'Michael Jacobs Charitable Remainder Trust dtd 12/06/16' (hereafter referred to as the '2016 Charitable Trust'). Mr. Okuma was instrumental in creating these trusts and retained all records of the trusts and their formation, but has refused to provide Mr. Jacobs with any documents or records. But, upon information and belief, Mr. Jacobs is the trustee of the 2016 Living Trust and is a beneficiary of the 2016 Charitable Trust. Edward Jones was the broker-dealer for the securities accounts owned by these two trusts, with Mr. Okuma as the registered representative on these accounts. On December 31, 2022 the 2016 Living Trust accounts at Edward Jones had a combined portfolio value of $9,429,317.58 while the 2016 Charitable Trust account at Edward Jones had a portfolio value of $889,265.15. **Exhibit 1**.

It is important to note that as Mr. Jacobs aged, lived alone, and his health declined, he became increasingly reliant on Mr. Okuma for any and all financial matters, including routine bill payments. In one of the most striking examples, Mr. Okuma created a joint checking account for Mr. Jacobs and him at United Community bank in Carrollton, Georgia, account ending -1888. **Exhibit 2**. Mr. Okuma controlled this checking account, and Mr. Jacobs would ask Mr. Okuma for help and/or permission whenever he needed money from his own personal bank account.

In 2022 a new trust was created called 'the Michael Allen Jacobs Trust dtd 6/7/2022' (hereafter referred to as the '2022 Trust'). At this point the two men had been working together for 6 years and Mr. Jacobs was now completely reliant on Mr. Okuma for financial matters. At this juncture, the circumstances regarding the formation of this trust are unclear, including whether or not this trust is valid and to what extent Mr. Jacobs participated in the formation of this new

trust.  Mr. Jacobs has not been able to obtain a copy of the 2022 Trust, but it appears that he is the purported trustee, *Mr. Okuma is the successor trustee*, and it is *unknown who the beneficiary is* of this 2022 Trust.

In 2023 (the year following the creation of the 2022 Trust) two closely related events occurred that would decimate Mr. Jacobs's $10 million fortune.  First, Mr. Jacobs's health declined precipitously due in part to a serious fall that he suffered in his home.  Second, Mr. Okuma decided to leave Edward Jones and join a new brokerage firm – Equitable Advisors.  Upon information and belief, in 2023 Mr. Okuma took advantage of Mr. Jacobs's declining health and embarked on a campaign to enrich himself and a family member at Mr. Jacobs's expense.  Sadly, Mr. Okuma's successful efforts to separate Mr. Jacobs from his fortune would have been stopped had Edward Jones, Equitable Advisors, and Vanguard properly supervised Mr. Okuma and/or diligently monitored Mr. Jacobs's accounts.

### 2023 – Creation of the 'Shadow Trust Account -5396' at Vanguard Controlled by Mr. Okuma

On or about February 1, 2023 Mr. Okuma had Mr. Jacobs open a trust account for the 2022 Trust at Vanguard with Mr. Jacobs as the purported trustee.  Mr. Jacobs has never received a copy of this 2022 Trust, but he has had an opportunity to review a copy of the certificate of trust that was filed with Vanguard as part of the account opening application.  The certificate of trust names Mr. Okuma as the successor trustee.  Further, it appears that a phone number and an email address were provided to Vanguard in the account opening documents that were, in fact, controlled by Mr. Okuma and that Mr. Jacobs did not have access to.  This trust account was set up with electronic delivery so that, in essence, Mr. Okuma was the only person who would receive copies of the account statements, trade confirmations, etc.  Upon information and belief, the main account

number for the 2022 Trust at Vanguard is –5396, but there may be other accounts for the 2022 Living Trust as well at Vanguard.

After creating the trust account (or accounts) at Vanguard for the 2022 Trust on February 1, 2023, Mr. Okuma then funded this account (or accounts) at Vanguard by transferring in approximately $9.4 million from Mr. Jacobs's 2016 Living Trust accounts at Edward Jones that Mr. Okuma still managed for Mr. Jacobs and completely controlled. This transfer of Mr. Jacobs's fortune from his 2016 Living Trust accounts at Edward Jones to the 2022 Trust account (or accounts) at Vanguard was done without Mr. Jacobs's knowledge or consent.  And upon information and belief, this transfer of $9.4 million was completed by May of 2023 when Mr. Okuma left Edward Jones and became an associated person and registered representative at Equitable Advisors.

In essence, Mr. Okuma (who had decided to leave Edward Jones for Equitable Advisors), created a shadow managed account at Vanguard under the 2022 Living Trust.  Through this Vanguard trust account, Mr. Okuma had complete control over and access to the vast majority of Mr. Jacobs's personal wealth (again, at least $9.4 million).  Presumably Mr. Okuma envisioned that there would be no supervision or oversight of his activities in Mr. Jacobs's trust account/s at Vanguard.

### 2023 Through 2025 – Mr. Okuma Systematically Raids Mr. Jacobs's Trust Account/s at Vanguard

On or about May 5, 2023, Mr. Okuma left Edward Jones and became a registered representative at Equitable Advisors.  Upon information and belief, Mr. Jacobs had been Mr. Okuma's biggest individual client at Edward Jones.  Yet after he moved to Equitable Advisors, Mr. Okuma claims that Mr. Jacobs was no longer his client and that Mr. Jacobs was not a customer at Equitable Advisors.  All of this is a surprise to Mr. Jacobs.  He believed that Mr. Okuma was

still his financial advisor and controlled and managed all of his money, as he had been doing since 2016.

In essence, Mr. Okuma now controlled the bulk of Mr. Jacobs's assets through the 2022 Living Trust account/s at Vanguard and was still Mr. Jacobs's financial advisor and controlled his assets and personal finances (as he had done since 2016). Yet Equitable Advisors maintains that Mr. Jacobs was not its customer and that Mr. Okuma (Equitable Advisors' associated person and registered representative) was not Mr. Jacobs's financial advisor. Mr. Okuma was able to achieve this ruse through a total breakdown in Edward Jones's supervision from February 1, 2023 through May 5, 2023 (when Mr. Okuma created the 2022 Living Trust account/s at Vanguard and transferred $9.4 million of Mr. Jacobs's assets from Edward Jones to Vanguard). And Mr. Okuma was able to achieve this ruse through a total breakdown in Equitable Advisors' supervision from May 5, 2023 onwards. And Mr. Okuma was also able to achieve this ruse through a total breakdown in Vanguard's due diligence process during the creation and account opening process for the 2022 Living Trust account/s, and Vanguard's failure to monitor the 2022 Living Trust account/s after they were created.

Now that Mr. Okuma controlled the vast majority of Mr. Jacobs's wealth (through his control of the 2022 Trust account/s at Vanguard) he began to systematically raid the Vanguard trust account/s to enrich himself and a family member. Beginning in August of 2023 (three months after Mr. Okuma started work at Equitable Advisors), Mr. Okuma transferred at least $7,243,000 out of the 2022 Trust account/s at Vanguard to accounts controlled by himself and/or a family member named 'Sabrina Okuma.'[1] This $7,243,000 conversion of Mr. Jacobs's assets was done through checks written from the 2022 Trust account/s at Vanguard to an entity called "The Tithe

---

[1] Upon information and belief, Sabrina Okuma is Mr. Okuma's wife.

LLC" and to an entity called "Okuma Capital Management." Mr. Jacobs has no knowledge of writing or signing any checks to "The Tithe LLC" nor to "Okuma Capital Management." Any such checks were made without his permission or authority.

The Tithe LLC is a Georgia domestic limited liability company created on January 31, 2018; its principal office address is 9147 Hanover Street, Lithia Springs, Georgia; and its organizer is Sabrina Okuma. **Exhibit 3**. Upon information and belief, 9147 Hanover Street, Lithia Springs, Georgia is Mr. Okuma's home address. And Okuma Capital Management is listed as a 'DBA' that Mr. Okuma owns and devotes 80 hours of time per month as disclosed on pg. 7 of his FINRA BrokerCheck report. **Exhibit 4** at pg. 9 "Other Business Activities, Item 3".

To date, Vanguard has refused to provide Mr. Jacobs with copies of his account statements and other records for the 2022 Trust. But the Atlanta office of the U.S. Securities & Exchange Commission (the SEC) has opened an investigation into Mr. Okuma and Okuma Capital Management[2]. The SEC has allowed Mr. Jacobs and his counsel to review certain checks that Mr. Jacobs purportedly signed and that were drawn against a 2022 Living Trust account at Vanguard. Upon information and belief this Vanguard account is -8732.[3] The checks that the SEC allowed Mr. Jacobs and his counsel to review establish the following method by which Mr. Okuma converted at least $7,243,000 of Mr. Jacobs's assets:

---

[2] This SEC investigation into Mr. Okuma stems, at least in part, from the activity in Mr. Jacobs's accounts at Edward Jones and Vanguard that is the subject matter of this Statement of Claim.
[3] This appears to be a different account at Vanguard than the core 2022 Trust account, which, upon information and belief, is -5936.

| Date | Check # | Payee | Memo line | Amount | Endorsement |
|---|---|---|---|---|---|
| 8/2/2023 | 1002 | The Tithe LLC | investment | 350,000 | Mr. Okuma |
| 9/20/2023 | 1005 | Tithe LLC | investment | 400,000 | Tithe LLC, Mr. Okuma |
| 11/26/2023 | 1006 | The Tithe LLC | investment | 500,000 | Mr. Okuma |
| 11/26/2023 | 1008 | Okuma Capital Management | investment 2 | 500,000 | Mr. Okuma |
| 8/5/2024 | 1019 | The Tithe LLC | real estate investment | 600,000 | Mr. Okuma |
| 9/2/2024 | 1020 | Tithe LLC | investment | 700,000 | Tithe LLC, Mr. Okuma |
| 10/21/2024 | 1021 | The Tithe LLC | real estate | 700,000 | Mr. Okuma |
| 11/18/2024 | 1022 | The Tithe LLC | real estate | 900,000 | Mr. Okuma |
| 11/25/2024 | 1025 | The Tithe LLC | - | 1,893,000 | Mr. Okuma |
| 3/10/2025 | 1027 | Tithe LLC | - | 700,000 | Mr. Okuma and Sabrina Okuma |

In addition to these ten checks purportedly written by Mr. Jacobs to The Tithe LLC and Okuma Capital Management for a combined $7,243,000 there are at least two other checks issued

from a 2022 Trust account at Vanguard that may also be funds that were converted by Mr. Okuma. These two checks total $1.9 million and are detailed as follows:

| Date | Check # | Payee | Memo line | Amount | Purported Endorsement |
|------|---------|-------|-----------|--------|----------------------|
| 5/9/2024 | 1017 | Michael A Jacobs | - | 900,000 | Michael A Jacobs |
| 7/16/2024 | 1018 | Michael A Jacobs | Real estate project | 1,000,000 | Michael A Jacobs |

In sum, Mr. Okuma gained Mr. Jacobs's trust and confidence during an approximate 6.5-year period (from approximately October of 2016 through February of 2023). During this time, Mr. Okuma appeared to be acting as a responsible and effective fiduciary and financial advisor who was safeguarding Mr. Jacobs's fortune. After gaining Mr. Jacobs's total trust, Mr. Okuma then created one or more shadow trust accounts at Vanguard and systematically raided and converted Mr. Jacobs's fortune.

At the start of 2025, Mr. Jacobs married a woman whom he had been dating for the last year and had originally been his caregiver. His wife had been troubled by Mr. Okuma's complete control over Mr. Jacobs's assets and finances, and his lack of transparency, and urged Mr. Jacobs to ask Mr. Okuma for an accounting of his assets. To date, Mr. Okuma's response has been to refuse to provide Mr. Jacobs with any records, refuse to answer his questions, and to repeatedly tell Mr. Jacobs simply that "you know where your money is." It also appears that Mr. Okuma has made unfounded allegations of elder abuse against Mr. Jacobs's new wife, in an apparent effort to obscure his own wrongdoing and his misappropriation of Mr. Jacobs's fortune.

### Mr. Jacobs's $1.4 Million 2024 Tax Bill Due to Mr. Okuma's
### Misconduct and Conversion

To add insult to injury, it appears that Mr. Okuma's misconduct has triggered a massive tax liability for Mr. Jacobs for tax year 2024.  Mr. Jacobs has just recently learned that over $7 million worth of securities that he owned, either in his individual capacity or in one or more trust accounts, were sold in 2024 without his permission or authority.  This massive sale of securities in 2024 includes approximately $5,512,968 worth of Aflac with a cost basis of only $1,093,624 that Mr. Jacobs had owned before working with Mr. Okuma.  Presumably these sales occurred in the 2022 Trust Vanguard account/s that Mr. Okuma controlled to provide the liquidity needed for Mr. Okuma's conversion of Mr. Jacobs's assets.  These unauthorized transactions have triggered a massive tax liability for Mr. Jacobs, estimated at **$1,428,628** in combined federal and state income taxes.  To be clear, Mr. Jacobs did not authorize the sales of these securities in 2024 and was unaware that these sales even occurred.  At this juncture, Mr. Jacobs's entire fortune appears to have been misappropriated by Mr. Okuma and he has no means to pay this $1,428,628 tax liability.

### The Failure of the Broker-Dealer Respondents
### (Edward Jones, Equitable Advisors and Vanguard)
### to Detect and Prevent Mr. Okuma's Misconduct

It appears that in less than two years, Mr. Okuma has managed to misappropriate at least $7,243,000 from Mr. Jacobs, and quite possibly misappropriate $9,143,000 or even more.  Further, Mr. Jacobs has not only had his fortune misappropriated by a financial advisor that he completely trusted and heavily relied upon, but he is also now saddled with a $1,428,628 tax bill for 2024 that he cannot possibly pay.  Sadly, this entire situation was preventable had the Broker-Dealer Respondents (Edward Jones, Equitable Advisors and Vanguard) properly supervised Mr. Okuma and/or exercised proper due diligence in the creation and monitoring of Mr. Jacobs's accounts.

*-Edward Jones-*

Mr. Okuma was a registered representative and associated person at Edward Jones from May of 2010 through May 5, 2023. Mr. Okuma filed for Chapter 7 bankruptcy in 2014 (two years before becoming Mr. Jacobs's financial advisor). Presumably, Mr. Okuma's personal bankruptcy required heightened supervision by Edward Jones. With a $10 million overall portfolio value, Mr. Jacobs was likely Mr. Okuma's largest individual customer at Edward Jones. Upon information and belief, Mr. Okuma was a joint bank account holder with Mr. Jacobs at United Community bank while Mr. Okuma was an associated person at Edward Jones[4]. This is a highly unusual arrangement and should have raised red flags and heightened supervision of Mr. Okuma's activities and Mr. Jacobs's accounts at Edwards Jones.

Mr. Okuma also created one or more trust accounts for Mr. Jacobs at Vanguard on February 1, 2023 while still an associated person at Edward Jones; this Vanguard trust account specifically identified Mr. Okuma (a FINRA registered representative) as the successor trustee. And shortly after creating this Vanguard account for such a large customer, Mr. Okuma transferred $9.4 million of Mr. Jacobs's $10 million total portfolio value away from Edward Jones and into the Vanguard trust account/s while he was still an associated person at Edward Jones. In sum, while still working at Edward Jones, Mr. Okuma had his largest customer (an elderly, frail man) open up a Vanguard trust account, with Mr. Okuma as the successor trustee, and transferred over 90% of this customer's assets away from Edward Jones and over to Vanguard. Edward Jones should have had appropriate compliance and supervisory controls to identify and flag this activity, speak to Mr. Jacobs about this activity, inquire why Mr. Okuma was the successor trustee on this new account, and prevent

---

[4] At this juncture, Mr. Jacobs has only been able to secure records from United Community bank going back to August of 2024, but he believes that Mr. Okuma was a joint account holder for much longer, dating back to Mr. Okuma's association with Edward Jones.

Mr. Okuma's scheme from ever happening.  Unfortunately, Edward Jones unlawfully failed to detect and prevent this scheme from occurring and is liable to Mr. Jacobs.

*-Equitable Advisors-*

Mr. Okuma was a registered representative and associated person at Equitable Advisors from May 5, 2023 through the present.  Equitable Advisors has a duty to properly supervise Mr. Okuma.  During this entire period of time, Mr. Okuma was the successor trustee on Mr. Jacobs's 2022 Trust account/s at Vanguard and controlled these accounts.  Further, Okuma Capital Management (the entity that is being investigated by the SEC) is a disclosed outside business activity and Equitable Advisors has a duty to monitor Okuma Capital Management.  During his association with Equitable Advisors, Mr. Okuma systematically misappropriated funds from Mr. Jacobs's Vanguard trust account/s.  This specifically included a $500,000 check drawn against Mr. Jacobs's Vanguard trust account on November 26, 2023 and payable to "Okuma Capital Management" with the memo line "investment."

Again, Okuma Capital Management is a disclosed outside business activity that Equitable Advisors had approved and had an obligation to monitor. Had Equitable Advisors properly supervised Mr. Okuma and properly monitored Okuma Capital Management, at a minimum this $500,000 check in November of 2023 should have raised red flags and Mr. Okuma's scheme to misappropriate Mr. Jacobs's fortune could have been unearthed and stopped.  It is worth mentioning that *after* the $500,000 check in November of 2023 to Okuma Capital Management was cashed, at least another $5,493,000 was misappropriated from Mr. Jacobs through checks made out to "The Tithe LLC" and as much as $7,393,000 was misappropriated from Mr. Jacobs including Checks 1017 and 1018, which were purportedly made out to Mr. Jacobs.

Further, it is clear that Mr. Okuma was a joint account holder with Mr. Jacobs on the United Community checking account during his association with Equitable Advisors. This was a highly unusual arrangement that should have been discovered with proper supervision and monitoring, and which should have raised additional red flags with Equitable Advisors. In sum, had Equitable Advisors properly supervised Mr. Okuma and his outside business activities, Mr. Okuma's scheme to misappropriate Mr. Jacobs's fortune would have been unearthed and stopped. Equitable Advisors failed to do so, and is liable to Mr. Jacobs.

*-Vanguard-*

While Mr. Okuma was never a registered representative and associated person at Vanguard, its negligence in creating the 2022 Trust account/s and its failure to properly monitor Mr. Jacobs's account/s was instrumental in enabling Mr. Okuma to misappropriate Mr. Jacobs's fortune in a period of just 1.5 years. Upon information and belief, Mr. Okuma (again, a registered representative at rival broker-dealer Edward Jones) set up the 2022 Trust account/s at Vanguard in February of 2023. At the time Mr. Jacobs was at the advanced age of 79-years, which presumably requires heightened review of new accounts. Mr. Okuma provided an email address and cellphone number that, upon information and belief, Mr. Okuma controlled and that Mr. Jacobs had no access to. And Mr. Okuma provided Vanguard with a certificate of trust during the account opening and review process that listed Mr. Okuma (again, a registered representative at rival broker-dealer Edward Jones) as the successor trustee.

During the account opening and review process, the elderly Mr. Jacobs was unaware that he was opening a new account that was purportedly a self-directed account; he thought that Mr. Okuma was still his trusted financial advisor on any and all securities accounts, and he delegated complete control of all of his financial affairs to Mr. Okuma. Had Vanguard conducted proper

due diligence during the account opening and review process, it would have uncovered Mr. Okuma's scheme – that he was, in essence, creating a shadow managed account at Vanguard that would hopefully be free of oversight and prying eyes at Edward Jones (and later Equitable Advisors).  Unfortunately, Vanguard did not exercise proper due diligence and care during this process, which enabled Mr. Okuma to effectuate his scheme to misappropriate Mr. Jacobs's fortune.

Further, separate and apart from the account opening and review process, Vanguard failed to properly monitor and safeguard the 2022 Trust account/s from improper and fraudulent activity. After Mr. Okuma transferred to Vanguard the $9.4 million that he was managing for Mr. Jacobs at rival broker-dealer Edward Jones, Mr. Okuma began to systematically misappropriate these funds via a series of large checks written out to entities that he or his spouse owned and/or controlled: The Tithe LLC and Okuma Capital Management.  Presumably, as successor trustee on the Vanguard 2022 Trust account/s, Vanguard had a signature card on file for Mr. Okuma with a copy of his signature.  As these checks were being issued (in amounts ranging from $350,000 to over $1 million) they were being endorsed by Mr. Okuma, and made out to entities that a simple Google search would disclose that Mr. Okuma or a person named "Sabrina Okuma" were affiliated with.  Upon information and belief, Mr. Okuma endorsed all of the checks made out to "The Tithe LLC" and to "Okuma Capital Management" – and again Vanguard should have had his signature card on file in these trust accounts as the successor trustee.

A quick comparison by Vanguard would unearth that, in essence, the elderly trustee of the trust accounts was burning through all of the $9.4 million in the account/s by purportedly writing checks to the successor trustee.  Upon information and belief, no one from Vanguard ever reached out to Mr. Jacobs to discuss or question the suspicious activity in his trust account/s.  And no one

at Vanguard did a comparison and determined that the account/s were being rapidly depleted via checks that were simply the successor trustee (now a registered representative at rival broker-dealer Equitable Advisors) cashing six and seven-figure checks purportedly issued by Mr. Jacobs. Had Vanguard exercised proper due diligence and care in the account opening and review process, and/or proper due diligence and care in monitoring Mr. Jacobs's accounts, it would have unearthed and prevented Mr. Okuma's scheme to misappropriate Mr. Jacobs's fortune.  Unfortunately, Vanguard failed in its duties, thereby enabling Mr. Okuma's scheme and Vanguard is liable to Mr. Jacobs.

### Damages

Mr. Jacobs should be able to enjoy the fruits of his labor and enjoy the twilight years of his life in comfort and with the knowledge that he is financially secure.  He trusted his financial advisor, Mr. Okuma, and relied on him to handle his financial affairs and safeguard his fortune. After gaining Mr. Jacobs's trust, and aware of his frailty, Mr. Okuma hatched a baroque scheme to concentrate Mr. Jacobs's fortune in one or more trust accounts at Vanguard, then systematically **misappropriated between $7,243,000 to $9,143,000** from Mr. Jacobs in just 1.5 years.  And "rubbing salt in the wound," Mr. Okuma's scheme not only separated Mr. Jacobs from his fortune, but also left Mr. Jacobs with **a $1,428,628 tax bill** for 2024 that he is unable to pay.

While Mr. Okuma is the primary bad actor, the Respondent Broker-Dealers (Edward Jones, Equitable Advisors and Vanguard) collectively and individually failed to properly supervise Mr. Okuma, failed to properly monitor Mr. Okuma's outside business activities, failed to properly monitor Mr. Jacobs's accounts and/or failed to exercise due diligence and care in creating and approving Mr. Jacobs's accounts.  Claimant has suffered damages due to Respondents' unlawful actions.  Accordingly, Claimant brings this arbitration claim and pleads compensatory damages

(currently estimated between $7,243,000 and $9,143,000) for the misappropriation of his assets, consequential damages in the amount of $1,428,628 for his 2024 income tax liability, punitive damages, statutory and/or exemplary damages where applicable, costs and expenses, and attorneys' fees, in an amount to be proved at the final hearing.

### LEGAL BASES UPON WHICH RELIEF CAN BE GRANTED[5]

**FINRA Rules Do Not Require Claimant to Plead Formal Claims or Identify Elements of Traditional Causes of Action; Claimants in FINRA Arbitration are Entitled to an Equitable Result**

This action is governed by FINRA rules, rather than by rules of civil procedure.  Unlike in court, FINRA rules do not require that "claims" or "causes of action" be pled.  In fact, in its response to comment letters regarding motions to dismiss, FINRA has  stated:

> ...FINRA reminds parties that there are no specific pleading requirements under the Codes. Rules 12302 and 13302 require a claimant to supply only "[a] statement of claim specifying the relevant facts and remedies requested" along with the required fees, copies, and signed submission agreement in order to initiate an arbitration. Similarly, the answer must include only "[an] answer specifying the relevant facts and available defenses to the statement of claim." Parties may obtain further information and documents through the discovery process.[6]

Since FINRA rules do not contain specific pleading requirements, Claimant is not obligated to set forth specific names or titles for their alleged rights of recovery against Respondents.  Rather, ample case authority establishes that arbitrators have the right to fashion whatever remedy best fits the evidence set before them.  Moreover, while respondent's counsel often expect or demand a pleading setting forth the specific elements of causes of action such as they would see in a court

---

[5]        "[T]he NASD Code constitutes an agreement in writing under the Federal Arbitration Act, 9 USCS 2," which binds the member to submit an eligible dispute to arbitration upon a customer's demand. *Liberte Capital Group, LLC v. Capwill*, 148 Fed. Appx. 41 3, 416 (6th Cir. 2005) (quoting *Washington Square Secs., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004)).

[6]        Letter dated September 15, 2008 from Mignon McLemore, Assistant Chief Counsel, FINRA Dispute Resolution to Securities and Exchange Commission, available online at: http://www.finra.org/web/groups/industry/@ip/@reg/@rulfil/documents/rulefilings/p116990.pdf

of law, that sort of specificity is not required in a FINRA proceeding. This fact has been recognized publicly by both Mark Lackritz, former President and CEO of the Securities Industry and Financial Markets Association[7] and Linda Fienberg, former President and Chief Hearing Officer of FINRA Dispute Resolution.[8]

FINRA's approach to the arbitration process is typical of arbitral forums. Courts have long made clear that arbitrators are not bound by legal technicalities and are free to fashion results based on fairness in light of the facts. For example, as stated in 6 C.J.S. *Arbitration* §104, "Generally, arbitrators are not obliged to follow strict rules of law in the matter at hand and they are privileged to apply broad principles of justice."[9]

Consequently, Rule 12302 of the FINRA Code of Arbitration states that the statement

---

[7]    Mr. Lackritz testified before the Committee on Financial Services, U.S. House of Representatives, on March 17, 2005 that "[u]nlike in court cases, claimants in arbitration are not held to technical pleading requirements." Mr. Lackritz further stated that while a "plaintiff in a court case may be faced with a daunting gauntlet of obstacles [including] a threshold motion attacking the sufficiency of pleading in a complaint," in contrast, "arbitration allows for a simple statement of claim[.]" See http://www.sifma.org/issues/item.aspx?id=18702

[8]    Ms. Fienberg, formerly the president of NASD Dispute Resolution, was a featured speaker and panelist at the North American Securities Administrators Association ("NASAA") presentation entitled "NASAA Listens Forum," held at the National Press Club in Washington DC. on July 20, 2004. She stated: In arbitration, in SRO NASD arbitration, unlike in court, you get an equitable result. You do not have to have a claim that is cognizable under state or federal law. It can be cognizable under NASD rules. So for example, there's only one cause of action under the federal securities laws, that's l0(B), it's very limited, has a short statute of limitations. The rules that are applied by arbitrators looking for equitable relief are much broader than if they had to strictly follow the law. The import of this statement by the CEO of FINRA-DR is that arbitration is an equitable proceeding, rather than an action strictly governed by law. Indeed, according to Ms. Fienberg, claimants are not even required to have a claim cognizable at law.

[9]    See also, for example, *National Iranian Oil Company v. Ashland Oil, Inc.,* 817 F .2d 326 (5th Cir. 1987) *(en banc)* ("[A]rbitration proceedings are by nature equitable."); *Application of Columbia Broadcasting System, Inc.,* 26 Misc.2d 972, 205 N.Y.S.2d 85 (1960) ("It is the settled policy of our courts to encourage arbitration and to enforce arbitration agreements with complete relief from legal technicality ...[and]...proper relief is ordinarily granted when the facts warrant, regardless of what may have been asked for."); *In the Matter of Arbitration Between Stanley J Staklinski and Pyramid Electric Company,* 6 A.D.2d 565, 180 N.Y.S.2d 20 (1958) ("As already pointed out, as embodied in the arbitration statue and as recognized in our highest court, arbitration may provide relief in circumstances and on conditions which even a court has no power to grant."); *Harold Rosa v. Transport Operators Co.,* 45 N.J. Super. 438, 133 A.2d 24 (1957) ("We recognize that an arbitrator does not always decide a case according to strict legal principles, but sometimes according to his own concept of what is just and right, and in such cases the courts will not disturb his decision except for very cogent reasons."); *California State Council of Carpenters v. The Superior Court of Orange County,* 11 Cal.App.3d 144, 89 Cal.Rptr. 625 (1970) ("Arbitrators may base their decisions on broad principles of justice and equity and every intendment of validity must be given the award.").

of claim need only specify "the relevant facts and remedies requested." Claimant has met those requirements here. He is under no obligation to delineate common law or statutory claims such as "negligence" or "breach of fiduciary duty," although such claims certainly are supported by the facts in the within matter.

Nonetheless, Claimant recognizes that Respondents or the Panel might feel more comfortable with at least a suggestion as to the types of traditional claims that might be supported by the alleged facts. Thus, *without waiving his right to seek or prove his entitlement to recover for any form of wrongdoing by Respondents,* Claimant will delineate the following types of wrongdoing for which he is entitled to be compensated.

## SUMMARY OF CLAIMS

Respondents violated multiple duties and obligations owed to Claimant. These duties and obligations are based on common law, statutes and regulations (both state and federal), and the rules, practices, and customs of the securities and investment adviser industries. Arbitration is an equitable forum, and Claimant is not required to plead statutory or common law causes of action against Respondents. Although this is an equitable forum, Claimant's claims include, but are not limited to, the following:

1. Breach of fiduciary obligations/duties;

2. Breach of contract;

3. Negligence/professional negligence;

4. Violations of Regulation BI;

5. Failure to supervise;

6. Conversion;

7. Civil Theft;

8.  Unjust Enrichment;

9.  Violations of state rules and regulations;

10.  Violations federal rules and regulations;

11.  Agency, *respondeat superior* and control person liability;

12.  General equitable principles that apply in arbitration.

## **DEMAND FOR RELIEF**

Based on the foregoing, Claimant demands judgment against Respondents as follows:

a.      Awarding compensatory damages in favor of Claimant against Respondents for all damages sustained as a result of the Respondents' wrongdoing for an amount determined at final hearing, currently estimated between $7,243,000 and $9,143,000;

b.      For consequential damages in the amount of $1,428,628 for Claimant's 2024 income tax liability;

c.      For reasonable attorneys' fees and prejudgment interest;

d.      For punitive damages, and/or exemplary or statutory damages;

e.      Awarding fees, commissions, and compensation earned from Claimant's investments;

f.      Awarding Claimant all expenses and costs, including experts' fees and FINRA forum fees and FINRA arbitrator compensation;

g.      Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Arbitration Panel.

## **HEARING LOCATION**

Claimant requests that the final hearing in this matter be held in Atlanta, Georgia.

Dated: June 3, 2025

**EPPERSON & GREENIDGE, P.A.**

*/s/ Dietrich P. Epperson*
Dietrich P. Epperson, Esq.
20 South Olive Street, Suite 304
Media, Pennsylvania 19063
Telephone: (610) 810-1885
dietrich@eppersongreenidge.com
*Attorneys for Claimant*

**Exhibit 1**

# Edward Jones
**MAKING SENSE OF INVESTING**

**Portfolio for Michael A Jacobs**

Financial Advisor EJ Okuma, 770-433-0212
2859 Paces Ferry Rd S.E., Suite 510, Atlanta, GA 30339

Statement Period Nov 26 - Dec 31, 2022          Page i of iii

MICHAEL A JACOBS
104 PLANTATION WALK
CARROLLTON GA 30117-6205

## Understanding Your Statement

Every financial services firm is required to send you account statements, but at Edward Jones, we go beyond the required. We want to give you the best resources to help you achieve your goals, and that includes your account statement, so it's important that you understand it. For a complete statement guide, visit edwardjones.com/mystatementguide. And as always, don't hesitate to contact your Edward Jones team if you have questions about your account.

## Portfolio Summary

## Your 2022 tax forms from Edward Jones

Edward Jones will furnish all Forms 1099-R and 1099-Q by Jan. 31, 2023, and all Consolidated 1099 Tax Statements by Feb. 15, 2023, per IRS requirements. We may not receive final information from issuers by Feb. 15, in which case your tax statement will not be final. Some issuers have until March 15 to provide final information. Visit us at edwardjones.com/taxcenter to learn more about your Edward Jones tax forms.

**Total Portfolio Value**

# $10,320,850.10

| | |
|---|---|
| 1 Month Ago | $10,372,332.55 |
| 1 Year Ago | $10,256,654.94 |
| 3 Years Ago | $9,160,592.98 |
| 5 Years Ago | $7,838,447.50 |

## Overview of Accounts

| Accounts | Account Holder | Account Number | Value 1 Year Ago | Current Value |
|---|---|---|---|---|
| Single Account Select | Michael A Jacobs | 60-1-1 | $0.01 | $0.01 |
| Living Trust Select | Michael Jacobs Charitable | 28-1-8 | $759,358.36 | $889,265.15 |
| Living Trust Select | Michael Allen Jacobs TTEE | 29-1-7 | $5,194,068.89 | $6,278,849.93 |
| Individual Retirement Account Select | Michael A Jacobs | 61-1-9 | $35,911.09 | $2,267.36 |
| Living Trust Guided Solutions Flex Account | Michael Allen Jacobs TTEE | 79-1-8 | $4,267,316.59 | $3,150,467.65 |
| **Total Accounts** | | | **$10,256,654.94** | **$10,320,850.10** |

Although account information is provided on this page, it does not guarantee an actual statement was produced. Refer to your account statement for the exact registration and more specific details regarding each account.

**Edward Jones**
MAKING SENSE OF INVESTING

**Portfolio for Michael A Jacobs**

Financial Advisor EJ Okuma, 770-433-0212
2859 Paces Ferry Rd S.E., Suite 510, Atlanta, GA 30339

Statement Period Nov 26 - Dec 31, 2022

## Financial Foundation

Reaching your personal financial goals depends on a strong foundation. At Edward Jones, we believe that foundation consists of regular reviews of your goals and their time frames, your comfort with risk (such as market volatility) and the way assets are allocated within your portfolio. Following is a summary of your financial foundation based on your discussions with your financial advisor.

### Retirement Goal for Jacobs, Michael A.

| | Risk Tolerance | Projected Spending Through | Desired Annual Spending | Retirement Portfolio Objective |
|---|---|---|---|---|
| **Living in Retirement** | Michael Medium | Michael to Spend to Age 90 | $60,000 | Balanced Growth and Income |

The Desired Annual Spending amount does not include variable expenses or debt payments you may have discussed with your financial advisor.

### Accounts Assigned to your Retirement Goal

| Accounts | Account Holder | Account Number | Portfolio Objective - Account |
|---|---|---|---|
| Single Account Select | Michael A Jacobs | XXX-XX960-1-1 | Balanced Toward Growth |
| Living Trust Select | Michael Jacobs Charitable | XXX-XX128-1-8 | All Equity Focus |
| Living Trust Select | Michael Allen Jacobs TTEE | XXX-XX129-1-7 | Balanced Growth and Income |
| Individual Retirement Account Select | Michael A Jacobs | XXX-XX261-1-9 | Balanced Growth and Income |

Note: It is important to review your account(s) to keep your investments aligned with your risk tolerance and positioned to achieve your goal. Any Review Due dates above refer to dates by which you must complete your next annual review. Please contact your financial advisor to update any missing or outdated Financial Foundation information or to schedule your next annual review.

## Overview of Other Products and Services

| Loans and Credit | Account Number | Balance | Approved Credit | Available Credit | Interest Rate |
|---|---|---|---|---|---|
| Amount of money you can borrow for Michael Jacobs Charitable | 28-1-8 | $0.00 | $444,632* | $444,632 | 8.25% |
| Amount of money you can borrow for Michael Allen Jacobs TTEE | 29-1-7 | $0.00 | $3,030,408* | $3,030,408 | 6.50% |
| Amount of money you can borrow for Michael Allen Jacobs TTEE | 79-1-8 | $0.00 | $1,648,197* | $1,648,197 | 6.50% |

# Edward Jones
### MAKING SENSE OF INVESTING

Financial Advisor EJ Okuma, 770-433-0212
2859 Paces Ferry Rd S.E., Suite 510, Atlanta, GA 30339

Statement Period Nov 26 - Dec 31, 2022                  **Page** iii of iii

## Overview of Other Products and Services  (continued)

| Insurance Protection | Policy Number | Death Benefit | | |
|---|---|---|---|---|
| John Hancock for Michael Jacobs | 5082 | $378,500.00 | | |

* Your approved credit is not a commitment to loan funds.  It is based on the value of your investment account which could change daily. The amount you may be eligible to borrow may differ from your approved credit.  Borrowing against securities has its risks and is not appropriate for everyone.  If the value of your collateral declines, you may be required to deposit cash or additional securities, or the securities in your account may be sold to meet the margin call.  A minimum account value is required if you have loan features on your account.  Your interest will begin to accrue from the date of the loan and be charged to the account.  Your interest rate will vary depending on the assets under care of your Edward Jones Pricing Group. For more information on how your interest rate is calculated, contact your financial advisor or please visit: www.edwardjones.com/disclosures/marginloans

Important disclosures; such as Statement of Financial Condition, Conditions that Govern Your Account, Account Safety, Errors, Complaints, Withholding, Free Credit Balance, Fair Market Value or Terminology; relating to your account(s) are available on the last page of this package or at www.edwardjones.com/statementdisclosures.

**Exhibit 2**

UNITED COMMUNITY (50)
119 MAPLE STREET
CARROLLTON GA 30117

DOCUMENT DATE 09/00/05
ACCOUNT: XXXXXXXXXX1888
DOCUMENTS:

PAGE
6
08/20/2024

TELEPHONE:800-822-2651


United
Community

🏠 FDIC

MICHAEL A JACOBS
EJIROGHENE ODE OKUMA
104 PLANTATION WALK
CARROLLTON GA  30117

44
2
4

==================================================================================
On October 1,the domestic and international incoming wire transfer fees
will be updated. Visit ucbi.com/personal-miscellaneous-fees-schedule to
view the change under "Wire Transfer Services." If you have any
questions, please don't hesitate to contact us.
==================================================================================
==================================================================================
                   UNITED CHECKING 55+ ACCOUNT XXXXXXXXXX1888
==================================================================================

                                        LAST STATEMENT 07/19/24        67,121.01
                                                 2 CREDITS          1,050,798.10
                                                26 DEBITS             938,900.02
                                        THIS STATEMENT 08/20/24       179,019.09
TOTAL DAYS IN STATEMENT PERIOD 07/20/24 THROUGH 08/20/24:                     32

          - - - - - - - - - - DEPOSITS - - - - - - - - - - -
REF #.....DATE......AMOUNT REF #.....DATE......AMOUNT REF #.....DATE......AMOUNT
       07/29 1000,000.00        08/19   50,798.10

          - - - - - - - - - - CHECKS - - - - - - - - - -
  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT
       *08/12       100.00    2012 08/19      54.25
    2011 08/15      542.40    2013 08/15      24.01

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

          - - - - - - - - - OTHER DEBITS - - - - - - - - -
DESCRIPTION                                         DATE         AMOUNT
                                                   07/22          16.79
                                                   07/22         220.00
                                                   07/22         900.00
                                                   07/23         330.00
                                                   07/29         878.00
                                                   07/29       1,000.00
                                                   07/31         220.00
                                                   07/31         221.00
               * * * C O N T I N U E D * * *

**Exhibit 3**

Control Number : 18015923

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

## CERTIFICATE OF ORGANIZATION

I, **Brian P. Kemp**, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**The Tithe LLC**
**a Domestic Limited Liability Company**

has been duly organized under the laws of the State of Georgia on **01/31/2018** by the filing of articles of organization in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on **02/09/2018**.



Brian P. Kemp
Secretary of State

**ARTICLES OF ORGANIZATION**

*Electronically Filed*
Secretary of State
Filing Date: 1/31/2018 1:38:02 PM

| BUSINESS INFORMATION | |
|---|---|
| **CONTROL NUMBER** | 18015923 |
| **BUSINESS NAME** | The Tithe LLC |
| **BUSINESS TYPE** | Domestic Limited Liability Company |
| **EFFECTIVE DATE** | 01/31/2018 |

| PRINCIPAL OFFICE ADDRESS | |
|---|---|
| **ADDRESS** | 9147 Hanover Street, Lithia Springs, GA, 30122, USA |

| REGISTERED AGENT'S NAME AND ADDRESS | |
|---|---|
| **NAME** | **ADDRESS** |
| Natasha A. Smith, CPA, LLC | 5300 Memorial Drive Ste 138, Dekalb, Stone Mountian, GA, 30083, USA |

| ORGANIZER(S) | | |
|---|---|---|
| **NAME** | **TITLE** | **ADDRESS** |
| Sabrina Okuma | ORGANIZER | 9147 Hanover Street, Lithia Springs, GA, 30122, USA |

| OPTIONAL PROVISIONS |
|---|
| N/A |

| AUTHORIZER INFORMATION | |
|---|---|
| **AUTHORIZER SIGNATURE** | Sabrina Okuma |
| **AUTHORIZER TITLE** | Organizer |

**Exhibit 4**



**BrokerCheck Report**

# Ejiro Ode Okuma

CRD# 5774832

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Broker Qualifications | 2 - 5 |
| Registration and Employment History | 7 |

 When communicating online or investing with any professional, make sure you know who you're dealing with. Imposters might link to sites like BrokerCheck from phishing or similar scam websites, or through social media, trying to steal your personal information or your money.

Please contact FINRA with any concerns.



**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - ○ information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - ○ information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
- 

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

www.finra.org/brokercheck

User Guidance

**Ejiro O. Okuma**
CRD# 5774832



## Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

**Currently employed by and registered with the following Firm(s):**

**IA** EQUITABLE ADVISORS, LLC
780 JOHNSON FERRY ROAD
SUITE 600
ATLANTA, GA  30342
CRD# 6627
Registered with this firm since: 05/05/2023

**B** EQUITABLE ADVISORS, LLC
780 JOHNSON FERRY ROAD
SUITE 600
ATLANTA, GA  30342
CRD# 6627
Registered with this firm since: 05/05/2023

### Broker Qualifications

**This broker is registered with:**

- 1 Self-Regulatory Organization
- 20 U.S. states and territories

**This broker has passed:**

- 0 Principal/Supervisory Exams
- 2 General Industry/Product Exams
- 1 State Securities Law Exam

### Registration History

**This broker was previously registered with the following securities firm(s):**



**IA** EDWARD JONES
CRD# 250
ST. LOUIS, MO
07/2010 - 05/2023

**B** EDWARD JONES
CRD# 250
Atlanta, GA
05/2010 - 05/2023

### Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

**Are there events disclosed about this broker?  No**

©2025 FINRA. All rights reserved. Report about Ejiro O. Okuma.

# Broker Qualifications



## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 1 SRO and is licensed in 20 U.S. states and territories through his or her employer.**

### Employment 1 of 1

| | |
|---|---|
| Firm Name: | **EQUITABLE ADVISORS, LLC** |
| Main Office Address: | **1345 AVENUE OF THE AMERICAS** <br> **NEW YORK, NY 10105** |
| Firm CRD#: | **6627** |

| | SRO | Category | Status | Date |
|---|---|---|---|---|
| Ⓑ | FINRA | General Securities Representative | Approved | 05/05/2023 |

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| Ⓑ | Alabama | Agent | Approved | 05/10/2023 |
| Ⓘ Ⓐ | Alabama | Investment Adviser Representative | Approved | 05/10/2023 |
| Ⓑ | Arizona | Agent | Approved | 05/05/2023 |
| Ⓘ Ⓐ | Arizona | Investment Adviser Representative | Approved | 05/12/2023 |
| Ⓑ | Florida | Agent | Approved | 05/24/2023 |
| Ⓘ Ⓐ | Florida | Investment Adviser Representative | Approved | 05/24/2023 |
| Ⓑ | Georgia | Agent | Approved | 05/05/2023 |
| Ⓘ Ⓐ | Georgia | Investment Adviser Representative | Approved | 05/09/2023 |
| Ⓑ | Illinois | Agent | Approved | 05/05/2023 |
| Ⓘ Ⓐ | Illinois | Investment Adviser Representative | Approved | 05/18/2023 |
| Ⓑ | Indiana | Agent | Approved | 05/05/2023 |
| Ⓘ Ⓐ | Indiana | Investment Adviser Representative | Approved | 05/15/2023 |

**Broker Qualifications**



## Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Kentucky | Agent | Approved | 05/05/2023 |
| IA | Kentucky | Investment Adviser Representative | Approved | 05/10/2023 |
| B | Louisiana | Agent | Approved | 05/05/2023 |
| IA | Louisiana | Investment Adviser Representative | Approved | 05/16/2023 |
| B | Maryland | Agent | Approved | 05/05/2023 |
| IA | Maryland | Investment Adviser Representative | Approved | 05/05/2023 |
| B | Massachusetts | Agent | Approved | 05/05/2023 |
| B | New Mexico | Agent | Approved | 05/05/2023 |
| IA | New Mexico | Investment Adviser Representative | Approved | 05/10/2023 |
| B | New York | Agent | Approved | 05/05/2023 |
| IA | New York | Investment Adviser Representative | Approved | 05/09/2023 |
| B | North Carolina | Agent | Approved | 05/05/2023 |
| IA | North Carolina | Investment Adviser Representative | Approved | 05/23/2023 |
| B | Ohio | Agent | Approved | 05/05/2023 |
| IA | Ohio | Investment Adviser Representative | Approved | 05/05/2023 |
| B | Oklahoma | Agent | Approved | 05/05/2023 |
| IA | Oklahoma | Investment Adviser Representative | Approved | 05/10/2023 |
| B | Rhode Island | Agent | Approved | 05/05/2023 |
| IA | Rhode Island | Investment Adviser Representative | Approved | 05/09/2023 |
| B | South Carolina | Agent | Approved | 05/05/2023 |
| IA | South Carolina | Investment Adviser Representative | Approved | 05/24/2023 |

## Broker Qualifications



### Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| Ⓑ | Tennessee | Agent | Approved | 02/12/2024 |
| Ⓑ | Texas | Agent | Approved | 05/05/2023 |
| Ⓘ | Texas | Investment Adviser Representative | Restricted Approval | 05/05/2023 |
| Ⓑ | Virginia | Agent | Approved | 05/05/2023 |
| Ⓘ | Virginia | Investment Adviser Representative | Approved | 05/10/2023 |

### Branch Office Locations

**EQUITABLE ADVISORS, LLC**
780 JOHNSON FERRY ROAD
SUITE 600
ATLANTA, GA  30342

**EQUITABLE ADVISORS, LLC**
Lithia Springs, GA

©2025 FINRA. All rights reserved. Report about Ejiro O. Okuma.

## Broker Qualifications



### Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below. A passed exam or exam waiver does not permit a broker to do business without an active SRO or state registration.

**This individual has passed 0 principal/supervisory exams, 2 general industry/product exams, and 1 state securities law exam.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|---|---|---|
| No information reported. | | |

### General Industry/Product Exams

| Exam | Category | Date |
|---|---|---|
| Ⓑ Securities Industry Essentials Examination | SIE | 10/01/2018 |
| Ⓑ General Securities Representative Examination | Series 7 | 05/06/2010 |

### State Securities Law Exams

| Exam | Category | Date |
|---|---|---|
| Ⓑ Ⓘ Uniform Combined State Law Examination | Series 66 | 07/02/2010 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

**Broker Qualifications**

**FINra**

**Professional Designations**

This section details that the representative has reported **0** professional designation(s).

No information reported.

## Registration and Employment History



### Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| **IA** | 07/2010 - 05/2023 | EDWARD JONES | 250 | Atlanta, GA |
| **B** | 05/2010 - 05/2023 | EDWARD JONES | 250 | Atlanta, GA |

### Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 05/2023 - Present | Equitable Advisors, LLC | Registered Representative | Y | New York, NY, United States |
| 03/2010 - 05/2023 | EDWARD JONES | FINANCIAL ADVISOR | Y | ST LOUIS, MO, United States |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

1) OUTSIDE INSURANCE

2) TRUSTEE OF FAMILY TRUST

3) DBA: OKUMA CAPITAL MANAGEMENT, OWNER, 05/16/2023, 80 HRS/MO



## End of Report

**This page is intentionally left blank.**

©2025 FINRA. All rights reserved. Report about Ejiro O. Okuma.